First case of the morning is agenda number 4, number 129, 967, People of the State of Illinois v. Traveris T. Guy. Counsel, for the appellant, are you prepared to speak? Good morning, Your Honors. May it please the Court and Counsel, I'm Assistant Attorney General Elda Malamud on behalf of the people. This Court should reverse the appellate court's judgment, which granted relief based on Petitioner's successive post-conviction petition. Now, our brief set out several bases for reversal, and I'd like to focus what the Court's lead oral argument today on two of those bases. First, Petitioner failed to establish the necessary cause to file a successive post-conviction petition alleging that direct appeal counsel is ineffective for declining to argue that his conviction for attempted murder of Sheena Woods was legally inconsistent with his conviction of the second-degree murder of David Woods. Second, direct appeal counsel was not ineffective because the underlying claim was meritless. The direct appeal petitioner's argument rests on the assertion that the pattern instruction used by the trial court for attempted murder misstated the law with respect to the intent requirement of attempted murder. But because Petitioner's counsel at trial agreed to the instruction, that argument was barred by the doctrine of invited error. And moreover, the IPI, the pattern instruction, accurately stated the law and reflected this Court's longstanding precedent. So turning to the first basis for reversal, Petitioner failed to demonstrate cause necessary to file the successive petition raising the claim. May I ask you, before you begin, to address the issue that the State has forfeited this argument? Well, Your Honor, first of all, there is established precedent of this Court which states that an appellee in the appellate court may raise any argument in this Court so long as it is supported by the record. And that's the case here. Now, there's some back and forth among the parties about whether this argument was actually raised properly in the appellate court. It's a complex procedural case, and there were appeals by the States, by the people, and by Petitioner. And they were at some point consolidated, and the cause argument is raised in one of them. But we can really set all that aside because forfeiture doesn't apply to this argument because the people were the appellee in the appellate court. And so under that principle, Petitioner still has to show cause for filing a successive post-conviction petition. And that's because the Post-Conviction Hearing Act envisions only the filing of one petition. To file a successive petition, Petitioner needs to show cause to file another one. And in this case, Petitioner points to the advice given to him by his direct appeal counsel. Now, as a fractional matter, Petitioner cites no precedent establishing that the advice or the performance of counsel can ever constitute cause for failure to raise a claim in the initial petition. But in this case, the counsel whose advice was supposedly the cause wasn't even representing Petitioner in his post-conviction proceedings. This was direct appeal counsel. And so, and in fact, in the letter which Petitioner put forward to demonstrate this advice that he apparently followed, counsel specifically stated, if you disagree with how my advice or the performance of trial counsel, you can raise these claims as an ineffective assistance of counsel claim. Petitioner chose not to do so. And so he cannot establish cause for failing to raise the claim in his initial post-conviction petition. And this court should reverse on that basis alone. Turning to the second basis for reversal, the underlying claim is meritless. So Petitioner's claim is that the direct appeal counsel should have argued that his conviction for the attempted murder of Sheena Woods was legally inconsistent with his conviction for the second degree murder of David Woods. And this rests on the argument that the pattern instruction misstated the law as to the intent requirement of attempted murder. Excuse me. So the pattern instruction states that a defendant must act with the intent to kill. Petitioner argues that, in fact, the pattern instruction mistakes the law and that the requirement is that the defendant acted with the intent to kill without lawful justification. But Petitioner's direct appeal counsel was not ineffective for declining to address this argument for multiple reasons. One, it was barred by the doctrine of invited error. So in a trial, a trial counsel agrees to giving the jury the pattern instruction. And this, of course, makes sense. There's, in fact, a Supreme Court rule, Rule of this Court, which states that a pattern instruction must be used unless it misstates the law. There's a strong presumption to use that instruction, and so counsel went for it with the pattern instruction. And then on appeal, the doctrine of invited error bars a party from arguing one thing in the trial courts for proceeding in one way in the trial court, and then on appeal proceeding in a totally different manner. And this, of course, is necessary because otherwise litigation would be unworkable, and it violates all notions of fair play to allow a party to proceed in one manner in the trial court and then turn around and argue the exact opposite in the appellate court. And so the argument was barred by the doctrine of invited error. Moreover, the pattern instruction accurately stated the law, the intent to kill. The committee notes for the instruction make clear that it's implementing this court's holding in People v. Harris. And in that case, the court faced instructions for an attempted murder conviction, which allowed a conviction for the intent to kill or the intent to cause great bodily harm or the knowledge that the acts created a great probability, a substantial probability, a great probability of creating bodily harm. And this court said, no, there's a limitation on which intent satisfies attempted murder, and that is the intent to kill. The intent to cause great bodily harm is insufficient, and that is because attempted murder is a specific offense, and so the defendant must intend the prohibited result, which is the death of an individual. So the direct appeal counsel was also, was not ineffective for declining to argue that the, excuse me, that the instruction failed to follow the law. And the petitioners also incorrect that subsequent cases overruled Harris. For instance, in the Barker case, in there, the jury instruction of issue was whether, was stated, or there was actually an indictment that stated that defendant had intended to commit murder. And this court held that that was sufficient because it fulfilled two purposes. It stated the specific offense, the defendant was alleged to have committed murder, and it satisfied the intent requirement. A couple of other cases involved attempted, whether there was a crime of attempted second-degree murder in Illinois. This court held that there wasn't, and that's because a defendant cannot intend to have one of the mitigating factors of second-degree murder applied. A defendant can't intend to have an unreasonable belief in the need for self-defense or intend to be seriously provoked. And the counsel was also not ineffective because even if the IPI had misstated the law, the verdicts weren't legally consistent because they were based on separate acts. So one act involved the shooting of David Woods, and then there was a second act that involved the shooting of Sheena Woods. There was testimony that time elapsed. But counsel, at the time those acts took place, weren't all four bullets fired at the same time? How do you separate the two acts? Yeah, Your Honor. There was testimony that time passed in between the two acts, that David Woods, who was in the front after he was shot, got up, stumbled to the back of the van, laid down. His daughter Sheena then turned to look at him, and only at that point was shot. But it's your position that we can separate the intent that Mr. Guy had when he fired the shots at David and the intent he had when the shots were fired at Sheena? That's right. Aren't those two intents the same, counsel? He was attempting to defend himself. He had the intent to commit to defend himself, which is an intent for self-defense. The question is whether it would be irrational for a jury to find that the intents were different. And here it wouldn't be, because A, time passed in between the shots, and B, the testimony was that a petitioner saw David or alleged that he saw David holding a gun, even though the testimony and evidence showed that there was no gun. The testimony was that it was at least rational to believe that he had fear of David, but there was no such testimony with respect to Sheena. How much time passed? There was testimony that a couple seconds maybe passed between each shot. The time passed from being at the front of the van to stumbling to the back of the van. Again, the question is whether it's irrational. But, counsel, what you're essentially saying is, given a couple of seconds, that he had the intent to defend himself against David, but at the same time, he formed the intent to murder Sheena. That's right. That any self-defense, at least it would have been rational for the jury to self-include. Counsel, was there any evidence, I don't remember this, that he knew that Sheena was in the van? Well, there was evidence that the window was, he testified that there was testimony that the window was covered or tinted, but that there was some sort of movement behind there. Was there any evidence that he knew that Sheena was in the van? That's just a yes or no. Sheena specifically? Or somebody. Well, Sheena, okay, Sheena specifically. There was, I believe there was testimony that he could see other people in the van. Okay. But, again, this is also an alternative basis for reversal. If this court finds that the jury, that the direct appeal counsel was not ineffective because the argument was barred by the doctrine of invited heir, and because the IPI accurately stated the law, it doesn't need to go to this issue of whether these acts were separable or not. That's an alternative basis and simply another reason why counsel might not have been ineffective. But that's, the court doesn't need to go there in order to reverse. Now, finally, turning just briefly towards the remedy, if the court were to find that there was an heir, that that reversal is appropriate in this case, the proper remedy would be retrial. And the established remedy for both inconsistent verdicts and for a prejudicial error, a jury instruction error, is retrial. And so that would be, no matter how the heir would be captured, that would be the appropriate remedy. That's not barred by double jeopardy because, as the United States Supreme Court recently held in Currier, double jeopardy does not apply when a defendant's voluntary choices lead to the retrial, which would be the case here as defendant agreed to the IPI. And even if retrial were somehow barred, then the proper remedy would be for this court to enter a conviction for the lesser included offense of aggravated battery with a firearm, which this court's rules do permit under Rule 650. May I ask you to address the Lopez case? Sure. So Lopez is a case where the court held that there is no crime of attempted second-degree murder. And so second-degree murder, to reach second-degree murder, you first have to find that the defendant committed first-degree murder, satisfied all the elements of first-degree murder. Then, and the people have to prove that beyond a reasonable doubt. Then the defendant has to prove, by preponderance of the evidence, that one of the mitigating factors is present. This is either what's known as serious provocation or imperfect self-defense. And what Lopez said was that there's no such crime as attempted second-degree murder because you need to find, in that case, there would have to be a finding that the defendant intended either to be seriously provoked or intended to have an unreasonable belief. Wait, wait, wait. Are you saying that's what they rejected? Exactly. That's what would have to. The idea was there is one crime with intent to kill. And then there are mitigations when we think about second-degree, different kinds of mitigation. But the jury first has to find that principle, an intent to kill, correct? Not an intent to defend himself or an intent to be seriously provoked. The first step is intent to kill, correct? Right. Is that what Lopez said? Yes. And is that what the instruction says? The instructions in this case? The IPI instructions. Yeah, the IP instructions say you need an intent to kill. So the IPI instruction follows the case in Lopez. And so in order, so I'm certainly going to be asking that same kind of question to your opponent. If there's an IPI instruction as to how to handle this and a Supreme Court case that controls, how is counsel ineffective? That's going to be my question. But you think Lopez controls this case? No. We don't think Lopez controls this case. I mean, we think that Lopez confirms, so that Lopez is a part of a series of cases of this court. So you have, going back to 1977 with Trinkle, 1978 with Harris, you have these cases which establish that for attempted first-degree murder, you have the necessary intent is the intent to kill. Then Lopez comes along and says, that's right, there's the attempt to kill. And you can't have attempted second-degree murder because the crime, that's just not the way the murder statute works. You can't intend that second-degree murder is first-degree murder with a mitigating factor. And so you can't intend to have committed first-degree murder but also have a mitigating factor apply. And so Lopez, I mean, it supports our position, it supports the IPI, but that isn't, it's not, I mean, this case is really determined by Harris in that line of cases, Trinkle. But Lopez is a part of that line of cases, to be sure. I don't know if I answered your question, Your Honor, or if there's anything else about Lopez that I could discuss. If not, then for the reasons stated, we would ask this court to reverse the appellate court's judgment. Thank you. Counsel. Counsel for the appellate. Good morning. I'm Dimitri Lopez. I'm from the Office of the State Appellate Defender, and I present your various guide. May it please the floor, counsel. Your Honor, the logical starting point in this case is to address the mental state for attempted first-degree murder, as that informs whether Mr. Kai's jury was wrongly instructed as to that mental state and whether the jury reached legally inconsistent verdicts. These are the issues that the state raised in its petition for leave to appeal and the reasons why this court granted discretionary review. So I'm going to focus my argument today on those issues. As for the issues that the state did not raise in its PLA, some of which the state has discussed today, I'll address those later in my argument. The mental state for an attempted offense is the intent to commit a specific offense. Therefore, to attempt to commit first-degree murder, a person must intend to commit first-degree murder. Now, the only way for a person to do that is by intending to act in a manner that satisfies all of the elements of first-degree murder. Of course, one element of first-degree murder is that an individual be killed. But another element of first-degree murder is that the killing be without lawful justification. Murder has always been defined as the unjustified killing of a human being. That was true at common law. It remains true today pursuant to the language of our criminal code and this court's precedent. Therefore, the mental state for attempted murder is the intent to kill without lawful justification. The intent to kill alone is not good enough because simply killing someone is not necessarily murder. Now, the state- Well, let's talk about the first-degree murder statute and this idea that in order to prove first-degree murder, first the state must prove the intent to kill. And then the case shifts to the idea of mitigation, whether there was failed self-defense or there was self-defense, failed self-defense, provocation, et cetera. But the first principle is the state has to prove an intent to kill, first-degree murder, correct? Yes, in part. An element of first-degree murder is that the killing be without lawful justification. You get on to the mitigating factors to determine what was the defendant thinking? Can we mitigate this? Did he intend to act in self-defense, but was that belief unreasonable? So the mitigating factors goes to the reasonableness of what the defendant was thinking. And we can just jump ahead to the discussion that you had with counsel about Lopez. In Lopez, this court actually acknowledged that the mental state for attempted first-degree murder is the intent to kill without lawful justification. As you discussed, this court addressed in Lopez where the offense of attempted second-degree murder existed. And in doing that, this court analyzed what would the mental state be for that offense if it existed. And I can read directly from this court's decision in Lopez. It said that the intent required for attempted second-degree murder, if it exists, would be the intent to kill without lawful justification and with either a sudden passion or an unreasonable belief in the need to use deadly force. Now, we know that second-degree... So how does this idea of failed self-defense fit in? Are you saying failed self-defense, which is what we're talking about here, right? Unreasonable belief? That that's an element or that the state has to rebut that? Or I'm not quite sure how you see this, you know, the logical framework of this, how it's supposed to work. The only way a person can commit murder is by killing someone unjustifiably. And so for you to think the state has the burden to show an intent to kill and that there was... I'm trying to meet the second-degree issues. And there was insufficient provocation or any of the other mitigating factors. The burden starts on the state to refute all those mitigating factors. Is that what you're saying? For which offense, just to be clear? First-degree murder. No, they have to prove that the killing was not legally justified. An unreasonable self-defense, is that not legal justification or is that legal justification? What are you saying? If the defendant believes he's acting in self-defense but that belief is unreasonable, that does not make the crime justified. Excuse me? It's not justified? That does not make the crime justified. So the burden is on the state from the very beginning to rebut this idea of a failed self-defense. It's not mitigation. It's an element. Yes, proving that the killing was not justified is an element. Whether or not the defendant's belief is reasonable is mitigation, and that's the defendant's burden. Doesn't the defendant have the burden to prove mitigation and to explain that he was provoked, he had this provocation, or he believed that there was a reason to defend himself? The burden kind of shifts once the state proves first-degree murder, that he had the intent and without lawful justification, the state's satisfied. Then doesn't the burden shift to the defendant and he presents his defense? If the defendant argues self-defense. Well, is he going to argue or is he going to present some evidence that established that he acted in self-defense? Yes, he does have to meet a burden to establish that he acted in self-defense, but without lawful justification is an element of first-degree murder. It has to be established by the state. So the state has the burden first. We don't get to this idea of mitigation. The state has to show that it was unreasonable for the defendant to believe that he had a right to defend himself. That's an element the state has to prove, not mitigation by the defense. Yes, and if the defendant were to argue, if it would be without legal justification element were to be disputed, the state would have to prove it was without lawful justification. Essentially, no reasonable belief. The defendant's conduct was unreasonable. That belief was unreasonable. Yes, and even if it were a case where the defendant did not argue self-defense, that element of without lawful justification still exists. The state still has to disprove that. It would be very easy to prove because the defense is not arguing legal justification, but it's still an element of the offense pursuant to the language of the criminal code and this court's precedent. So I get this right. There's nothing in the case that indicates that the defendant's going to be raising self-defense, but in the state's case in chief, they must prove that there was no self-defense. Is that right? They must prove that the shooting, that the killing was without lawful justification.  Because the killing alone is not murder. Now, that's not how the IPI sets it up, right? With respect to first-degree murder? Pardon? With respect to first-degree murder or attempted? Yes, yes, first-degree murder first. Respectfully, it does not matter what the IPI says. The IPI is not the law. The criminal code is. And the criminal code includes an element without lawful justification. So if I could ask the question that I posed to you before. You're saying trial counsel is ineffective for failing to object to the IPI instruction.  Has there ever been a case that the counsel could rely on to make that argument in the trial court? There is no case. So how is counsel ineffective if this is what the IPI says? We know the rule is it's presumed, or I'm not sure exactly the right word, but that the court is going to give the IPI. And there's never been a case challenging that the IPI is incorrect. You're saying it's unreasonable or ineffective for counsel not to object? Absolutely. The IPI is not the law. Rule 451 of this court specifically contemplates that IPIs can be wrong. And that they're only to be given when it's confirmed that the language of the IPI accurately reflects the law. The plain language of the criminal code makes it very clear that the intent to kill alone is not sufficient for attempted murder. And this court's precedents in Barker, Reagan, and Lopez also make that clear. As I just said, this court explicitly said in Lopez that the mental state for attempted first-degree murder would be the intent to kill without lawful justification. If you accept the state's position and hold that the mental state for attempted murder is merely the intent to kill, you have to overrule not only Harris, but Trinkle, Barker, Reagan, and Lopez. Now, just moving on, Mr. Guy's jury was wrongly instructed that the mental state for attempted murder was merely the intent to kill. This resulted in legally inconsistent verdicts. On the one hand, the jury found that Mr. Guy committed second-degree murder with respect to David Woods, necessarily finding that when he fired the shots in the van, he believes he was acting in self-defense. But on the other hand, the jury also found Mr. Guy guilty of attempted murder with respect to Sheena. However, in order for that to be a valid verdict under Illinois law, the jury would have been required to find that when he fired the shots, he intended to kill without lawful justification. As this court recognized in Lopez, the intent to kill without lawful justification and the intent to kill in self-defense cannot coexist. So he was found guilty of second-degree murder, correct?  Intent? Without, with, lawful, I'm sorry, right, but the intent to kill, but, and also that it was an unreasonable belief. Yes, he believes he was acting in self-defense. Did one intend to do something that's unreasonable? No. No. He intended to act in self-defense. The jury determined that belief was unreasonable, given the circumstances. But we know that the jury found he believes he was acting in self-defense, and a guilty verdict for attempted murder, which requires a finding that he intended to kill without lawful justification, intended to commit murder, is inconsistent with that second-degree murder finding. So the two verdicts cannot stand together. When the jury found him guilty of second-degree murder, finding that he believed he was acting in self-defense, the jury could not, as a matter of law, then convict him of attempted murder with respect to Sheena, finding that he intended to commit a murder. Those two findings conflict. They can't coexist. Now, the state has argued that this could be a case of Mr. Guy first intending to act in self-defense, but then, while he was shooting, he changed that intent to want to commit murder. This court should reject that argument for several reasons. First, the state repeatedly conceded in the appellate court, at oral argument, that this case did not involve Mr. Guy changing his mental state. Justice Brennan twice asked the appellate prosecutor, are we dealing with a nuanced change in intent here? And the appellate prosecutor said, no, we're not. The appellate court relied on that factual concession when reaching this decision, and this court should hold the state to that factual concession. Secondly, the state is violating due process by changing its theory of the case on appeal. Both in the trial and the appellate court, the state's position's theory was that Mr. Guy had one single intent. It's not arguing that he had two. Finally, the evidence at trial established that Mr. Guy fired four gunshots, one right after the other. However, two state witnesses were directly asked, were these gunshots fired one right after the other, and they both agreed that they were. So given the circumstances of this case, it's illogical to conclude that Mr. Guy fired a few shots intending to act in self-defense but then changed his mental state intending to commit murder. Your Honors, the claims of inconsistent verdicts and instructional error have been raised in the context of claims of ineffective assistance of trial counsel and appellate counsel, and also via a claim of unreasonable assistance of post-conviction counsel. I'm going to leave the intricacies of these claims to the briefs. Unless the court has specific questions on them, I'm going to move forward to a discussion on a remedy for these errors. The only sensible remedy for inconsistent verdicts and the instructional error is to do exactly what the appellate court did, and that's to reverse the attempted murder conviction without remand for a new trial. Given how the jury was instructed in this case and the jury's guilty verdicts, we know exactly what the jury found with respect to Mr. Guy's mental state. It found that he intended to kill, and it found that he believed he was acting in self-defense. And that it was unreasonable. Well, he didn't believe it was unreasonable, but the jury found it to be unreasonable. Correct. Well, the jury found that his belief was unreasonable. The jury found his belief was unreasonable, not that he believed it was unreasonable, because you can't intend an unreasonable belief, as this Court said, no less. It's complex. But given that Mr. Guy's jury... I'm really lost. I mean, that's what I thought failed self-defense was, that the jury finds he believed it was not, like I said, failed self-defense. He presents evidence that he thought he had the right to defend himself, but the jury rejects that and says that was unreasonable. In order to find a mitigating factor of imperfect self-defense, the jury finds that he subjectively believed he was exercising his right to self-defense. But the jury finds that that was unreasonable, given the circumstances. So the jury isn't finding that he believed it was unreasonable. That's just an objective finding. So subjectively, he believed he was acting in self-defense. Objectively, it was unreasonable. That's imperfect self-defense. That's a mitigating factor. Now, it's important to recognize that the Court's erroneous jury instruction did not infect the underlying factual findings that the jury made that served as a basis for its verdicts. Given that the jury was wrongly instructed on attempted murder, the factual findings that the jury made required the jury to find the serendipity of attempted murder. But had the jury been properly instructed on the mental state for attempted murder, that is, the intent to kill without lawful justification, those same factual findings that the jury made would have required the jury to conclude the exact opposite, that Mr. Guy was not guilty of attempted murder. So we know in this case that but for that instructional error, the jury would have found Mr. Guy not guilty of attempted murder because it had already been found by the intent to act in self-defense. So this case is unlike most inconsistent verdict cases where a jury makes an inconsistent factual finding on the material fact. There is no factual inconsistency here with respect to the jury's findings. The inconsistent verdict were caused by the instructional error. So when you look at the question of remedy, the best remedy is simply to reverse the attempted murder conviction without remanding for a new trial, doing exactly what the appellate court did. That respects what the jury found, and it gives the jury's findings finality. There's no need to wipe them out. What about the alternative, lesser-included? Sure. We acknowledge that this court has the authority to answer a conviction on a lesser-included aggravated battery. However, when deciding whether to do that, this court should look to the reasons why the appellate court decided not to. We think that should inform the court's decision as to whether to enter a conviction for that. And what happened to the appellate court was that the state never requested a conviction for aggravated battery. And the appellate court issued an order to the state for oral argument, ordering the parties to be prepared to discuss that oral argument, the question of remedy, because, as we find out in the appellate court's opinion, the state did not meaningfully discuss remedy in its brief. Come time for oral argument, Justice Brennan directly asked the appellate prosecutor, what happens to the offense of aggravated battery if we reverse the attempted murder conviction? The appellate prosecutor's answer was that offense would not survive. How is that consistent with our decision in Kennebrew? The facts are a bit different than in Kennebrew. In Kennebrew, the state, in its petition for leave, requested that the court impose a conviction on the lesser-included. The state didn't even do that here. In its petition for leave to appeal, the state doesn't mention aggravated battery. So we're dealing with multiple levels of forfeiture, not requesting it in the appellate court, not requesting it in the petition for leave to appeal, an actual concession in the appellate court, perhaps wrongfully, that you cannot enter a conviction for aggravated battery, all in the context of the state violating the appellate court's order to be prepared to discuss that oral argument, the question of remedy. The appellate court says in its opinion we failed to present a meaningful argument for remedy. This case is similar to Kennebrew in the sense that throughout this case up until the 11th hour, the state has gone with an all-or-nothing approach, attempted murder only. We don't want to risk a conviction on the lesser-included. And this court should not be rescuing the state from the consequences of the strategic decisions. Essentially, the state made us bed, it should lie in. And given the multiple layers of forfeiture, the concessions, the consequences of the state's strategy, it would be unjust to Mr. Guy for the court to ignore all that, ignore everything the state did. If the state had argued to the appellate court, enter a conviction for aggravated battery, I most likely would have conceded that's the appropriate remedy. We wouldn't be having this discussion. But that's not what happened. And we're dealing with multiple layers of forfeiture and concession. And when you look at this court's precedent, in those circumstances, multiple layers of forfeiture and concession, this court does not overlook those. This court holds the state to that. And that's what this court should do here. So unless there are any further questions, Mr. Guy, I respectfully request that you affirm the appellate court's judgment. It was not erroneous in any respect. And I thank you for your time. Thank you very much, counsel. That's the reply. Thank you, Your Honors. A couple quick points on rebuttal. First, just to be clear, self-defense is not an element of murder. And with respect to that, it's an affirmative defense by statute. And so as the questions by the court were bringing out with Petitioner's counsel, the people do not have to prove self-defense. The people do not have to allege a lack of self-defense. If a defendant brings up self-defense, then the people need to prove that there was no justifiable self-defense beyond a reasonable doubt. But it's not an element of the offense. And so when the state charges and attempts to prove attempted first-degree murder, it does not have to address self-defense in any form. It simply has to address it once. It's brought up by the defendant, as was the case here. And the jury rejected the claim of self-defense. And so once it's brought up by the defendant, then it is incumbent upon the state to disprove that, basically. It does become an element. It would be listed in the jury instruction explaining why it was not self-defense, correct? It's not an element of the crime, Your Honor. But the state does have to prove it beyond a reasonable doubt. And so it would be part of the instructions as to what the jury would have to find in order to convict. As it was in this case, Your Honor. Exactly right. And this brings me back to the Chief Justice's question about Lopez. And just to be clear, we think that Lopez controls in that it rejected an argument, which is in some ways being repackaged by a defendant here. And what Lopez said was he can't. There is no intent to have a mitigating factor be present. And people don't have to. There's no such thing. That's not an element of the crime. So to that extent, Lopez controls. It rejects the argument that there can be an intention to have one of the mitigating factors apply. So Harris and those cases control as to the—they set forth the requirement for intent as to attempted first degree murder. And then Lopez rejected the arguments, albeit in a case that involved whether there was such a crime as an attempted second degree murder. So hopefully that's clear, our positions on those cases. Then second, as the Court raised and brought up, this case is in the context of an ineffective assistance of counsel claim. And so as a petitioner conceded, I believe, as this counsel conceded, there would have to be—this Court, to find that the IPI misstated the law, would have to overturn precedence. And so we'd be—we'd have to find that appellate counsel was ineffective for declining to raise an argument that was foreclosed by established precedence, as well as that was reflected in the IPI. And that's certainly not ineffective assistance of counsel to decline to raise such an argument. And finally, just to return to the threshold argument, there was—petitioners failed to establish cause to raise this claim in a successive post-conviction petition in the first place. And the Court can reverse on that basis as well. So unless this Court has any further questions that people have— Counsel, I have one question for you. Your opponent raised the issue that in the—in your petition for leave to appeal, you raised this issue. The appellate court created a conflict in the appellate districts when it erroneously held that a jury's conviction of a defendant of second-degree murder, based on the mitigating factor that the defendant unreasonably believed there was a need for self-defense, is fatally inconsistent with the defendant's conviction for attempt first-degree murder. That's the only issue you presented to the Court. Is that correct? That's correct, Your Honor. And this—well, the PLA raised the issue and the remedy issue, but— But you've expanded— With respect to— You've expanded the issues you want the Court to consider once you come up here. Is that correct? That is correct, Your Honor. And as discussed, being the appellee in the appellate court, this Court has held that any party can raise—any appellee in the appellate court can raise an issue in this Court, so long as it is supported by the record. And the Court can do so here until it doesn't apply forfeiture to the cause argument. But you do acknowledge that there was a very limited issue that you presented to this Court for—in this— Yes, Your Honor. That is correct. Okay. Thank you. You're welcome, Your Honor. So unless the Court has any further questions, we would ask the Court to reverse the judgment of the appellate court. Thank you. Thank you very much. This case, Agenda Number 4, Number 129-967, People of the State of Illinois v. Traveris T. Guy, will be taken under advisement. Thank you both for your arguments today.